de la HOUSSAYE, Judge.
This devolutive appeal, timely taken by James W. Lawrence, arises from a deficiency judgment suit in which Hood Motor Company, Inc. was awarded the sum of $2,089.69. This deficiency judgment was awarded to appellee after he had seized and had sold, under Louisiana’s executory process laws (L.S.A.-C.C.P. Art. 2631 et seq.), a 1969 Chevrolet Caprice automobile which was mortgaged to appellee to secure the payment of a note signed by appellant. No appearance was made by appellant in this executory process suit. However, appellant answered • the suit for deficiency judgment generally denying the allegations of the petition and he filed a reconventional demand seeking damages of $4,500.00 for the wrongful seizure of the automobile, alleging that the seizure and sale of this vehicle violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.
At the trial of this matter, and on this appeal, appellant maintains that Louisiana’s executory process statutes are unconstitutional due to the fact that no judicial hearing was required or given before the automobile was seized and sold. Although this Court rejects appellants’ contention that Louisiana’s executory process is unconstitutional under Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), as these statutes were specifically upheld by the Louisiana Supreme Court in Buckner v. Carmack, La., 272 So.2d 326 (1973), we do find that, in this particular case, the procedures used by appellee to seize and sell this particular vehicle was a denial of due process rights of appellant under the Fourteenth Amendment of the United States Constitution.
When appellee filed the executory process suit, the order permitting executory process to issue was signed by the Clerk of Court for the Parish of Tangipahoa, not by a judge. Ordinarily, the Clerk of a District Court outside Orleans Parish may sign the order for the issuance of executo-ry process under L.S.A.-C.C.P. Art. 283. However, in light of the Fuentes case, supra, and the recent expression of the United States Supreme Court in Mitchell v. W. T. Grant Company, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), we find that the provisions of Art. 283 which grants to the Clerk of Court the authority to issue orders for executory process is unconstitutional.
In Fuentes v. Shevin, supra, the Court struck down Florida and Pennsylvania statutes which permitted the secured installment creditor the right to repossess the goods sold his debtor, without notice, hearing, and without a judicial order or supervision, but with the help of a sheriff *145 operating under a writ issued by a court clerk at the behest of the seller. Because this was carried out without notice or an opportunity for hearing and with no judicial participation, this kind of seizure was held violative of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In Buckner v. Carmack, supra, the Louisiana Supreme Court distinguished the replevin statutes of Florida and Pennsylvania from Louisiana’s ex-ecutory process statutes primarily because the judge of a court of proper venue had to be satisfied that a proper showing had been made by the petitioner, his pleadings, and the attached exhibits before the order is signed. The Court stated:
“An examination of Louisiana procedures points up valid distinctions between them and those of Florida and Pennsylvania. A writ of seizure and sale in Louisiana is issued by a judge of a court of proper venue. To justify the issuance of the writ, the plaintiff must make a proper showing to the reviewing judge.”
“The judge must satisfy himself that the plaintiff’s petition is supported by authentic evidence of (1) the instrument evidencing the mortgagor’s indebtedness; (2) the Act of Mortgage or privilege containing a confession of judgment; and (3) any other instruments necessary to complete proof of plaintiff’s right to use executory process. L.S.A.-C.C.P. Art. 2635.” Ibid.Ibid. 272 So.2d 326, 330.
In Mitchell v. W. T. Grant, Company, supra, Louisiana’s sequestration statutes (L. S.A.-C.C.P. Art. 3501 et seq.) were upheld by the Court. The order for sequestration, in this case, was signed by a judge of the Parish of Orleans. It should be noted that the Clerk of Court for the Parish of Orleans is not authorized to issue orders of sequestration (and of executory process) as L.S.A.-C.C.P. Art. 281 exempts them from the provisions of L.S.A.-C.C.P. Art. 283. In footnote 5 at p. 1899 of the Mitchell case, it was noted that the validity of procedures to obtain these writs outside the Parish of Orleans was not at issue and there was no dispute that judicial authority for the writ was obtained as required by Art. 281. Throughout this decision, the court recognized that the debtor is not at the mercy of his creditor as judicial control prior to the issuance of this writ was provided by Louisiana’s sequestration statutes. For example, the court stated:
“Moreover, in the parish where this case arose, the requisite showing must be made to a judge and judicial authorization obtained. Mitchell was not at the unsupervised mercy of the creditor and court functionaries. The Louisiana law provided for judicial control of the process from beginning to end. This control is one of the measures adopted by the State to minimize the risk that the ex parte procedure will lead to a wrongful taking.” Ibid. 94 S.Ct. 1895, 1904, 1905.
The Court further stated:
“Here [under Louisiana’s sequestration statutes], the initial hardship to the debt- or is limited, the seller has a strong interest [in the property], the process proceeds under judicial supervision and management and the prevailing party is protected against all loss.” Ibid. 94 S.Ct. 1895, 1906. (Emphasis ours.)
The Court also stated:
“In the parish where this case arose [Orleans], the clear showing' required [before the issuance of sequestration] must be made to a judge, and the writ will issue only upon his authorization . . . ”. Ibid. 94 S.Ct. 1895, 1899;
(Emphasis ours).
In the case before this court, no judicial control, authorization, or supervision was present for the seizure and sale of the automobile, as the order was signed by the clerk of court and enforced by the sheriff. Accordingly, we find that the order and the resulting seizure of the automobile was wrongfully issued. We hold, by this decision, that the provision of L.S.A.-C.C.P. *146 Art. 283 which allows a clerk of court to issue orders of executory process is unconstitutional. We make no pronouncements on the remaining provisions of that article.
Appellant has also raised on this appeal a defect in the sheriff’s return which he maintains cannot be used in evidence to show service on Mr. Lawrence. Since we have disposed of this case on other grounds, it is unnecessary for this Court to render an opinion concerning this issue.
We now turn to Mr. Lawrence’s request for damages for the wrongful seizure of the automobile. In his reconven-tional demand, he asked for the following damages:
Loss of one 1969 Chevrolet Caprice $2,000.00
Loss of use and enjoyment of his motor vehicle, aggravation and mental anguish 2,500.00
Total damages $4,500.00
Mr. Lawrence testified that the car was bought in his own name but was for the benefit of his son, George Lawrence (Tr. 31), as his son was seventeen years old at the time of the purchase. (Tr. 31). He testified that he never used the car himself but that his son would take his (appellants’ wife to the cemetery once or twice a week. (Tr. 34). There was no testimony as to the value of the car except from George Lawrence and Arthur Hood, Sr. (President of Hood Motor Company). George Lawrence testified that the vehicle was in “fair shape” (Tr. 43) and that while he had the car, he had the wiring replaced, mufflers installed, timing readjusted and a fuel pump installed. Mr. Hood stated that the car was in very bad shape; that it couldn’t be reconditioned for sale, so it was sold for $200.00 to a junk dealer. (Tr. 39).
From this testimony, we find that appellant has not proved, by the preponderance of the evidence, that the vehicle was worth $2,000.00, and we accept the testimony of Mr. Hood that the value of the car is $200.00 and will award Mr. Lawrence this amount.
Since Mr. Lawrence never used this car, we do not see how he would be entitled to any damages for the loss of use of the car, as well as damages for the aggravation and mental anguish caused by the loss of use of the car. Since attorney’s fees were not requested Mr. Lawrence, nor were any proven, he is not entitled to attorney’s fees.
Accordingly, the decision of the Trial Court is reversed and the judgment awarding appellee $2,089.69 is vacated. Judgment is rendered in favor of appellant of $200.00 for the loss of his vehicle, all other claims for damages are rejected. Costs of this appeal are to be borne by appellee.
Reversed.