Judgment rendered November 16, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,799-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SHARON JACKSON                                    Plaintiff-Appellant

versus

MINDEN POLICE                                    Defendants-Appellees
DEPARTMENT, ET AL

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 76,176

Honorable Charles A. Smith, Judge

* * * * *

LAW OFFICE OF ATTORNEY
RESHONDA L. BRADFORD, LLC            Counsel for Appellant
By:  Reshonda L. Bradford

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, LLP        Counsel for Appellees,
By:  Joseph S. Woodley                Minden Police Department
                                      and City of Minden

* * * * *

Before COX, STEPHENS, and MARCOTTE, JJ.

**COX, J.**

This suit arises out of the 26th Judicial District Court, Webster Parish, Louisiana. Sharon Jackson filed a petition for damages on behalf of her minor daughter, Z.J., against the Minden Police Department and City of Minden (collectively referred to as "the City"). The trial court granted the City's exception of no cause of action and dismissed with prejudice all claims against the City. Mrs. Jackson appealed. This Court reversed the trial court and remanded this case for further proceedings. *Jackson v. Minden Police Dep't*, 52,489 (La. App. 2 Cir. 2/27/19), 266 So. 3d 462, *writ denied*, 2019-00697 (La. 9/6/19), 278 So. 3d 373. After further proceedings, the City filed a motion for summary judgment, which the trial court granted. Mrs. Jackson now appeals. For the following reasons, we affirm the trial court.

## FACTS

In the early morning hours of May 1, 2016, Mrs. Jackson took her 15-year-old daughter, Z.J., to Minden Medical Center ("Minden Medical") for a rape kit to be performed. The staff at Minden Medical called the Minden Police Department. Officers spoke with Z.J. and Mrs. Jackson. Mrs. Jackson told officers she thought her daughter and a 24-year-old man by the name of "Tra" had sexual contact that night. Z.J. told officers that she did not want a rape kit and did not have sex with Tra. She stated that they just drove around and he was a friend. Z.J. then relented and asked to have a rape kit in order to prove to her mother that she did not have sex. Officers did not believe that a rape kit needed to be performed because no sexual contact was made. Mrs. Jackson then took Z.J. home.

Later that day, Z.J. was admitted to Minden Medical after she attempted suicide. Z.J. was discharged on May 2, 2016. On May 3, 2016, she agreed to go to the police station to give a statement and tell officers that she and Tra did have sex the night of April 30, 2016.

Mrs. Jackson filed a petition for damages against the City on May 1, 2017. She claimed that as a result of the officers' failure to follow mandatory investigation requirements, any chance of securing evidence was lost and Z.J. was left feeling "dejected and drowning in despair." She claimed that the actions of the officers constituted gross negligence, a violation of the duty to uphold public safety, and a violation of the duty to abide by mandatory investigative and reporting requirements.

On June 21, 2017, the City moved for a dismissal on the basis that Mrs. Jackson's petition failed to state a cause of action. The trial court granted the no cause of action and dismissed the case with prejudice. Mrs. Jackson appealed to this Court. This Court reversed the trial court and found a cause of action existed because Z.J. falls under the protections of Louisiana Children's Code Title VI, which creates mandatory investigation procedures when law enforcement receives a report of a crime involving the sexual abuse of a child. La. Ch. C. art. 615.1. That analysis was limited to Mrs. Jackson's petition, the facts of which had to be taken as true.

After the case was remanded for further proceedings, the City denied Mrs. Jackson's allegations. The City pled all limitations of liability based on La. R.S. 13:5106, *et seq.*, 13:5112, and 9:2798.1. The City also argued the principles of comparative negligence and comparative fault.

On March 29, 2021, the City filed a motion for summary judgment, asserting that Mrs. Jackson and Z.J. both testified that Z.J. did not report that

any sexual conduct occurred, did not want a rape kit, and did not injure herself because of a failure to investigate or obtain a rape kit. The City asserted that after deposition testimony was taken, the facts are undisputed and inconsistent with the allegations.

Mrs. Jackson opposed the City's motion for summary judgment. She argued that Z.J. was an unemancipated minor at the time of the incident and for that reason, mandatory statutory provisions should have been followed. She highlighted the officer's supplemental report which provided that Z.J. asked for the rape kit to prove nothing happened and officers felt she was telling the truth so no rape kit was performed. She asserted that genuine issues of material fact remain regarding whether officers had discretion to order the rape kit when the victim was a minor; whether Z.J. had legal authority to decide whether the rape kit would be performed; and whether the limited investigation and reports complied with Louisiana law.

The parties filed multiple oppositions to each other's filings. The trial court ordered that Z.J.'s medical records, Z.J.'s deposition, Mrs. Jackson's deposition, and the police reports be sealed.

The summary judgment hearing was held on October 19, 2021. The trial court found that the following actions indicated an investigation took place: numerous reports taken and filed by officers; there were follow-ups to those reports; officers met with Z.J.; officers attempted to contact the alleged perpetrator; and, officers questioned the homeowner where the alleged incident took place and the homeowner denied that either individual had been in the home. The trial court also found that there was no cause-in-fact evidence that the alleged suicide attempt was a result of the failure of the police department to conduct the rape kit. For these reasons, the City's

motion for summary judgment was granted. On November 2, 2021, for reasons orally assigned, the trial court granted the City's motion and dismissed all of Mrs. Jackson's claims with prejudice. Mrs. Jackson now appeals.

## DISCUSSION

Mrs. Jackson appeals, asserts the summary judgment was improperly granted, and presents the following issues for review:

1. Whether the work conducted by the Minden Police Department in this case satisfied the mandatory, investigatory requirements of Louisiana Children's Code Articles 609, 610, 612 and 615.1;

2. Whether, at the summary judgment phase, Plaintiff, Sharon Jackson, was required to prove the injuries that she and "ZJ," suffered in this case;

3. Whether the Court erred in its determination that Sharon Jackson and the minor child, ZJ, would not be able to prove they sustained an injury should this matter progress to trial;

4. Whether the Court erred in granting the motion for summary judgment after recognizing conflicting facts and statements within evidence presented.

All these issues will be discussed together as they involve the summary judgment phase.

A *de novo* standard of review is required when an appellate court considers rulings on summary judgment motions. The appellate court must use the same criteria that governed the trial court's determination of whether summary judgment was appropriate. *Bank of New York Mellon v. Smith*, 15-0530 (La. 10/14/15), 180 So. 3d 1238; *Diamond McCattle Co., L.L.C. v. Range Louisiana Oper., LLC*, 53,896 (La. App. 2 Cir. 4/14/21), *writ denied*, 21-00681 (La. 9/27/21), 324 So. 3d 92.

4

A court must grant a motion for summary judgment if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law, pursuant to La. C.C.P. art. 966(A)(3). *Diamond McCattle Co., L.L.C. v. Range Louisiana Operating, LLC, supra*.

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Green v. Brookshire Grocery Co.,* 53,066 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1256. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Green v. Brookshire Grocery Co., supra*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Green v. Brookshire Grocery Co., supra*.

La. Ch. C. art. 615.1(A) provides the following:

A. When a law enforcement agency receives a report of a crime involving sexual abuse of a child, including but not limited to those received pursuant to Louisiana Children's Code Article 610(E)(3), the law enforcement agency shall:

(1) Maintain a report containing all information listed in Louisiana Children's Code Article 610(B) and (C), if known, **and conduct a full investigation of the allegations**.

(2) Maintain the confidentiality of the identity of the reporter in accordance with R.S. 46:56.

(3) After investigation of the report of child sexual abuse by the law enforcement agency having jurisdiction over the reported

incident, send the investigative file to the district attorney for review whether or not an arrest is made. (emphasis added).

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9.

Mrs. Jackson's allegations in her petition hinge on whether officers breached their duty by failing to obtain a rape kit when she initially presented Z.J. to the hospital. For this reason, the officers' investigative actions after the alleged suicide attempt and admission by Z.J. that a rape occurred are not discussed.

We emphasize that law enforcement is required to conduct a full investigation. It is undisputed that law enforcement arrived at the hospital to interview Z.J. in the early morning hours of May 1, 2016. Z.J. never alleged a rape or any sexual encounter during that interview. She adamantly denied any sexual encounter and stated she would have a rape kit in order to prove that to her mother. Mrs. Jackson alleged her daughter was raped because she was dropped off by an older man after lying about where she was going. After interviewing both mother and daughter, law enforcement did not believe a rape occurred that night. According to police reports, Mrs. Jackson agreed with officers that there was no rape and left the hospital with her daughter.

Mrs. Jackson stated in her deposition that she asked the officer if they were going to do the rape kit like she asked and he responded that he did not think a rape kit needed to be performed. Z.J. stated in her deposition that officers interviewed both her and her mother at the hospital. She stated that

6

she heard the officer tell her mother that there was no need for a rape kit because she told the officer that nothing happened.

Regardless of whether Mrs. Jackson still believed a rape occurred, it is undisputed that she voluntarily left the hospital with Z.J. without a rape kit. There is no indication that she was forced to leave. The fact that Z.J. later changed her statement does not change the analysis in the initial encounter with law enforcement. Z.J. adamantly stated in the initial interview that there was no sexual encounter. The officers could not foresee Z.J. changing her statement and later alleging that a rape did occur.

We note that, practically speaking, a rape kit is not performed in all allegations of rape. There are instances where the victim refuses a rape kit or the rape occurs at a significant time before the accusation is made to law enforcement. We also note that a rape kit is not required for a successful prosecution of a defendant.

Mrs. Jackson cites various Children's Code articles, but those articles do not require a rape kit be performed under the circumstances of this case. La. Ch. C. art. 609 addresses mandatory reporters. La. Ch. C. art. 610 includes the procedure for reporting abuse and what shall be included in the report. La. Ch. C. art. 612 comprises the evaluation of the level of risk to the child and what action may be necessary to protect the child from abuse.

Under the facts of this case, Z.J. initially denied sexual contact during the officer's questioning. Even though Mrs. Jackson believed sexual conduct occurred, she only saw Tra drop off Z.J., which caused her to suspect sexual activity. Mrs. Jackson then left the hospital after a certain period of time without the rape kit being performed. We find no jurisprudence or law stating a rape kit should be forced when the victim

7

denies a rape and law enforcement finds no basis for suspecting a rape occurred. Therefore, under the totality of the circumstances presented, the failure to obtain a rape kit does not amount to a lack of investigation. This argument lacks merit.

Because we find that there are no material facts in dispute regarding whether the officers failed to investigate, we pretermit the remaining issues involving damages.

## CONCLUSION

For the reasons stated above, we affirm the trial court's granting of the City's motion for summary judgment. Costs associated with this appeal are cast on Mrs. Jackson.

**AFFIRMED.**